**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **RICHARD J. KNOX,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | **4:05-CV-131(HL)** |
| **THE CESSNA AIRCRAFT COMPANY** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

# ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 32) and Plaintiff's Notice of Objection to Defendant's Exhibits Supporting Defendant's Motion for Summary Judgment and Request for Additional Discovery (Doc. 40). For the reasons stated below, Defendant's Motion for Summary Judgment is DENIED. In addition, Plaintiff's Notice of Objection to Defendant's Exhibits Supporting Defendant's Motion for Summary Judgment and Request for Additional Discovery is DENIED.

## I.    FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to Plaintiff as the nonmoving party, the Court finds as follows. Plaintiff Richard Knox was involved in a four-wheeler accident on September 3, 2005, when the four-wheeler he was riding rolled on top of him as he was riding up a hill. (Knox Dep. p. 69-71). At the time, Plaintiff was employed by Defendant Cessna Aircraft Company. On Tuesday, September 6, 2005, Plaintiff's first scheduled day of work

after the accident, Plaintiff had to leave work early due to the pain in his hip, which was a result of the accident and was compounded by the fact that Plaintiff's job required that he stand on his feet ten hours a day. (Id. at p. 75). On the next day, September 7, 2005, Plaintiff notified Defendant that he was unable to work and that he had a doctor's visit with Dr. Gregory Parker. (Id. at p. 75-76). Dr. Parker evaluated Plaintiff and found that he was suffering from left lower quadrant and pelvic pain with back pain from the four-wheeler accident. (Dr. Parker Dep. p. 19). Dr. Parker prescribed Plaintiff a narcotic pain killer called Lorcet, gave Plaintiff a written excuse to remain out of work from Wednesday, September 7 until Monday, September 12, and scheduled a CT scan for the following day (Thursday, September 8, 2005). (Parker Dep. pp. 20, 27, 28, 33, 36; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. 2). Plaintiff then notified his supervisor, Frank Lake, that he would be unable to work until Monday, September 12. (Lake Dep. p. 21). Plaintiff's CT scan on Thursday, September 8 came back normal, but Plaintiff continued to experience pain from the four-wheeler accident and continued taking the Lorcet. (Knox Dep. pp. 82-84).

On Monday, September 12, 2005, Plaintiff attempted to return to work. After a few hours at work that morning, Plaintiff spoke with Susan Milner, Defendant's Safety and Health Coordinator. During his conversation with Milner, Plaintiff informed her of his four-wheeler accident and that he was taking Lorcet for his pain. (Knox Dep. p. 83-86; Milner Dep. p. 36). Milner told Plaintiff that he could not work while on Lorcet because its side effects made it unsafe to take while working. As a result, she asked Plaintiff to contact his physician to try and receive an over-the-counter pain medication or, in the alternative, an extended home rest

requirement.  (Milner Dep. Ex. 23).

After Plaintiff spoke with Milner, he contacted Frank Lake, his supervisor, and apprised him of the situation.  Plaintiff told Lake that he was worried he was going to miss work because he did not have any more vacation or personal days.  Lake told Plaintiff to go see Myra Whitley, Defendant's Human Resources Manager.  Plaintiff went to see Whitley and explained the situation to her.  Whitley then gave Plaintiff a FMLA request form, a FMLA certification form, and Defendant's standard form notifying employees of FMLA's regulations.  (Knox Dep. p. 87; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. 6 & 7).  After receiving the paperwork and filling out the FMLA request form, Plaintiff asked Whitley whether he would need to call-in his absences for the remainder of the week.  Plaintiff was aware of Defendant's "no call, no show" policy, which provides that an employee can be terminated for three "no call, no show" incidents within a rolling twelve (12) month period.  (Knox Dep. p. 78; Knox Cont. Dep. Ex. 12, p. 25).  Whitley told Plaintiff that he did not need to call-in his absences, and that she would notify his supervisors.[1]  Plaintiff then left work and went straight to the doctor's office to drop off the FMLA certification form.  (Knox Dep. p. 93-94).

Plaintiff missed work the following three days on Tuesday, September 13, Wednesday, September 14, and Thursday, September 15.  Plaintiff did not call-in his absences on those days, but on September 13 he did leave a message on Whitley's voicemail to see if his doctor had

---

[1]The Court notes that Defendant disputes this fact.  Whitley, however, cannot remember whether she made the statement or not.  (Whitley Dep. p. 88).

faxed over his FMLA certification.[2]  Whitley did not return his call.  (Knox Dep. p. 97).

Whitley eventually spoke with Plaintiff on Thursday, September 15 or Friday, September 16.[3]

(Knox Dep. p. 100; Whitley Dep. p. 91).  During this conversation, Whitley informed Plaintiff

that she had not yet received his FMLA certification, and that Plaintiff had three "no call, no

show" absences for failing to call-in his absences that week.  Plaintiff responded that he would

return to work on Monday, September 19 with his FMLA certification.  (Knox Dep. pp. 101,

104).   After speaking with Plaintiff, Whitley met with Milner and Lake to discuss the

continuation of Plaintiff's employment.  (Whitley Dep. pp. 100, 106; Lake Dep. pp. 37-39).

During this meeting, the decision was made to terminate Plaintiff on Monday, September 19 if

he did not return to work with his FMLA certification form.  (Whitley Dep. p. 104)

Plaintiff returned to work on Monday, September 19 with his FMLA certification in his

possession.[4]   After working for a few hours, Lake and Alfonza King, an employee in

Defendant's Human Resources Department, held a meeting with Plaintiff.  During this meeting,

Lake and King informed Plaintiff that he was being terminated for having three days of "no call,

no show" absences within a twelve (12) month period.[5]   (Knox Dep. p. 116; Lake Dep. pp. 45-

---

[2]The Court notes that Defendant also disputes this fact.

[3]Plaintiff cannot remember whether the conversation occurred on Thursday or Friday. Whitley believes the conversation occurred on Thursday, September 15.

[4]Defendant alleges Plaintiff did not have this paperwork with him when he returned to work on Monday, September 19.

[5]In addition to the three "no call, no show" incidents from the week prior to his termination, Plaintiff also had two documented "no call, no show" absences from January 2005. (Pla.'s Resp. Def.'s Mot. Summ. J. Ex. 7).

47; King Dep. pp. 86-87). Plaintiff informed them that he had his FMLA certification for the physical condition that resulted in his absences the prior week, but King informed him that his FMLA certification was irrelevant at that point.[6] (Knox Dep. p. 120). At the time Plaintiff was terminated, Defendant had neither approved nor denied Plaintiff's FMLA request.

After he was terminated, Plaintiff hired an attorney to represent him in this matter. Thereafter, Defendant extended an unconditional offer of reinstatement to Plaintiff. (Def.'s Mot. Summ. J. Exs. 5 & 7). Plaintiff refused the offer and filed suit against Defendant alleging that his termination violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2601 *et seq.* (West 1999 & Supp. 2007).

## II. <u>DISCUSSION</u>

### A. STANDARD OF REVIEW

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. <u>Id.</u> at

---

[6]Because Defendant alleges that Plaintiff did not have his FMLA certification with him when he returned to work on Monday, September 19, Defendant also disputes this fact.

254-55. The Court may not, however, make credibility determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## B. Family and Medical Leave Act Claims

In its Motion for Summary Judgment, Defendant argues that this Court should grant summary judgment on two issues. First, Defendant contends that summary judgment should be granted on the issue of its liability under FMLA. Second, Defendant argues that even if this Court denies summary judgment on the issue of liability, this Court should limit the amount of

damages that Plaintiff can recover. The Court will discuss the liability and damages issues in turn. Additionally, Plaintiff's Notice of Objection to Defendant's Exhibits relates to exhibits that Defendant has used to support its argument on the damages issue. Thus, Plaintiff's Notice of Objection to Defendant's Exhibits will be addressed in the Court's discussion of the damages issue.

### 1. Liability

FMLA provides that eligible employees are entitled to twelve (12) workweeks of leave during any twelve (12) month period for, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612(a)(1)(D) (West 1999). When the need for FMLA leave is foreseeable, employees must give their employers at least thirty (30) days notice before the date the leave is to begin. 29 U.S.C.A. § 2612(e). When the need for FMLA leave is not foreseeable, employees must provide notice to their employers "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a) (2006). Employees are "expected" to give notice within one or two working days of learning of their need for leave. Id. Additionally, employers can require employees who request FMLA leave on the basis of a serious health condition to provide medical certification to support their need for FMLA leave. 29 U.S.C.A. § 2613(a) (West 1999); 29 C.F.R. § 825.305 (2006). When employers require medical certification of employees who need unforeseeable leave, they must allow their employees at least fifteen (15) days to provide the requisite medical certification. 29 C.F.R. § 825.305(b).

When employees return from FMLA leave they are entitled to be restored to their pre-

leave position or an equivalent position without loss of benefits. 29 U.S.C.A. § 2614(a) (West 1999). It is unlawful for employers to restrain, deny, or interfere with any rights granted by FMLA, and it is also unlawful for employers to discharge or in any other way discriminate against employees who oppose any practices made unlawful by FMLA. 29 U.S.C.A. § 2615(a) (West 1999). Employees can enforce their FMLA rights by bringing a private right of action against their employers. 29 U.S.C.A. § 2617(a) (West 1999); Strickland v. Water Works and Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001). FMLA's private right of action includes two types of claims: "[1] interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and [2] retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." Strickland, 239 F.3d at 1206. Plaintiff has asserted both an interference claim and a retaliation claim against Defendants.


## FMLA Interference Claim

To establish an interference claim, a plaintiff must demonstrate by a preponderance of the evidence that he was entitled to a benefit under FMLA and that the defendant denied him that benefit. Id. at 1206-07; Drago v. Jenne, 453 F.3d 1301, 1306 (11th Cir. 2006). In contrast to a retaliation claim, a plaintiff bringing an interference claim does not have to prove that the defendant intended to interfere with the plaintiff's FMLA rights. Strickland, 239 F.3d at 1208. When the FMLA benefit denied to an employee is the employee's right to reinstatement after taking FMLA leave, the employer can avoid FMLA liability by demonstrating that it terminated

the employee for reasons unrelated to his FMLA leave. <u>Parris v. Miami Herald Pub. Co.</u>, 216 F.3d 1298, 1301 n.1 (11th Cir. 2000); <u>O'Connor v. PCA Family Health Plan, Inc.</u>, 200 F.3d 1349, 1354 (11th Cir. 2000); <u>see</u> 29 C.F.R. § 825.216(a) (2006).

Here, Defendant asserts in its Motion for Summary Judgment that there is no evidence that Plaintiff was terminated for any reason other than his alleged violation of the company's "no call, no show" policy.[7] In response, Plaintiff has asserted three grounds for denying Defendant's Motion for Summary Judgment on his FMLA interference claim. First, Plaintiff asserts that Defendant cannot rely on its internal "no call, no show" policy because FMLA does not permit such policies to be applied to deny an employee's FMLA rights. Second, Plaintiff asserts that Defendant also cannot rely on the "no call, no show" policy as a basis for Plaintiff's termination because Plaintiff was not given the appropriate written notice of the policy as required by FMLA. Last, Plaintiff asserts that there are genuine issues of material fact as to

---

[7]Plaintiff's complaint asserts three counts against Defendant: (1) improper denial of leave under FMLA (Count I); (2) wrongful termination in violation of FMLA (Count II); and (3) improper retaliation due to the exercise of FMLA rights (Count III). Defendant has moved for summary judgment on the second count on the ground that a wrongful termination claim does not exist under FMLA. Defendant correctly points out that the only two causes of action that exist under FMLA are (1) an interference claim, and (2) a retaliation claim. <u>See</u> <u>Strickland</u>, 239 F.3d at 1206. But this Court construes Plaintiff's Complaint broadly and finds that Plaintiff's second count asserts a theory of recovery under an interference claim. In other words, Counts I and II are interference claims and Count III is a retaliation claim. Specifically, Count I asserts an interference claim on the basis that Defendant interfered with Plaintiff's FMLA rights by denying him leave. Count II asserts an interference claim on the basis that Defendant interfered with Plaintiff's FMLA rights by not restoring Plaintiff to his pre-leave position. As a result, this Court will not grant summary judgment on Count II of Plaintiff's Complaint. Furthermore, because Plaintiff was terminated prior to the formal approval or denial of his FMLA leave, Defendant can only prevail on Count I if it terminated Plaintiff for reasons unrelated to his FMLA leave.

whether Plaintiff was actually fired for allegedly violating Defendant's "no call, no show" policy.

First, FMLA does not prohibit employers from terminating employees who do not comply with an internal company policy that requires employees to call-in when they will be absent.[8] The fact that the absence might be related to a FMLA qualifying event does not abrogate the right of employers to know whether their employees will be coming to work on a particular day. FMLA's regulations provide that employees who need unforeseeable leave are required to "give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303. An employer's policy that requires employees to call in to work when they will be absent is clearly consistent with FMLA and its regulations because the regulations themselves require that employees give notice of the need for unforeseeable leave as soon as practicable. See Spraggins v. Knauf Fiber Glass GmbH, Inc., 401 F. Supp. 2d 1235, 1239-40 (M.D. Ala. 2005) (holding that FMLA allows an employer to require notice one hour before the employee's shift begins, as long as it is reasonable to expect the employee, under the individual circumstances, to give such notice). Numerous courts have recognized that "no call, no show" policies are consistent with FMLA and have upheld such policies against FMLA challenges. See, e.g., Bones v. Honeywell Int'l Inc., 366 F.3d 869, 878 (10th Cir. 2004); Lewis v. Holsum of Fort Wayne, Inc., 278 F.3d

---

[8]At this stage, it is important to emphasize that the Court is not making a determination as to whether Defendant terminated Plaintiff for violating the "no call, no show" policy. The Court is simply making the determination that FMLA and its regulations do not prohibit Defendant from relying on the policy as a basis for Plaintiff's termination.

706, 709-10 (7th Cir. 2002); <u>Gilliam v. United Parcel Service, Inc.</u>, 233 F.3d 969, 971 (7th Cir. 2000); <u>Spraggins</u>, 401 F. Supp. 2d at 1239-40. If this Court accepted Plaintiff's position, employers would be severely disadvantaged because they would be prohibited from requiring employees to give advance notice of their absences, even when they are capable of giving advance notice. Without advance notice that an employee will be absent, employers are unable to make arrangements to have somebody else fill in for the absent employee. <u>See</u> <u>Spraggins</u>, 401 F. Supp. 2d at 1239. Because FMLA allows employers to require that their employees call-in their absences, this Court finds that Defendant is entitled to rely on its "no call, no show" policy as a basis for Plaintiff's termination.

Plaintiff's second argument is that Defendant cannot rely on its "no call, no show" policy as a basis for terminating Plaintiff because Plaintiff did not receive notice of the policy.[9] FMLA's regulations provide that employers are required to provide their employees with written guidance about their rights and obligations under FMLA. 29 C.F.R. § 825.301 (2006). In addition to the general requirement that employers must give their employees written guidance about their FMLA rights and obligations, the regulations also provide a list of provisions that are "required" to be set forth in the form of a written notice. 29 C.F.R. § 825.301(b)(1). If an employer does not provide the requisite written notice, "the employer may not take action against an employee for failure to comply with any provision required to be set

---

[9]Plaintiff clearly knew that the "no call, no show" policy existed, but Plaintiff argues that he is not bound by the call-in requirement because he was not given written notice of it when he met with Whitley and filled out the FMLA request form. (Knox Dep. p. 78; Pla.'s Br. Resp. Def.'s Mot. Summ. J. p. 11).

forth in the notice."  29 C.F.R. § 825.301(f).  Noticeably absent from the list of provisions required to be set forth in the written notice is any mention of a requirement that employers provide written notice of their "no call, no show" policies.  See 29 C.F.R. § 825.301(b)(1).  The only mention of anything similar to a "no call, no show" policy is contained at § 825.301(2), which provides that "[t]he specific notice <u>may</u> include other information–e.g., whether the employer will require periodic reports of the employee's status and intent to return to work, <u>but is not required to do so</u>."  29 C.F.R. § 825.301 (b)(2) (emphasis added).  Because Defendant was not required to provide Plaintiff with written notice about its call-in requirement, any potential failure on the part of the Defendant to provide Plaintiff with such notice does not preclude Defendant from relying on the call-in requirement as a basis for Plaintiff's termination.

Plaintiff's third and final argument is that this Court should not grant summary judgment for Defendant on Plaintiff's interference claim because genuine issues of material fact exist as to whether Plaintiff was terminated for violating the "no call, no show" policy.  Because Plaintiff was denied his right to reinstatement after taking leave for a FMLA qualifying event, Defendant must demonstrate that Plaintiff was terminated for a reason unrelated to his FMLA request.  See <u>Parris</u>, 216 F.3d at 1301 n.1. Defendant has asserted that Plaintiff was terminated for violating the company's  "no call, no show" policy, a reason unrelated to Plaintiff's FMLA request.  Viewing the facts in the light most favorable to the Plaintiff as the nonmoving party, this Court finds that summary judgment is inappropriate because genuine issues of material fact exist as to whether Plaintiff was terminated for reasons unrelated to his FMLA request.

Most notably, there is an issue whether Plaintiff had to comply with the "no call, no

show" policy. Plaintiff stated that Defendant's Human Resources Manager, Myra Whitley, told him when he left work on Monday, September 12 that he did not have to comply with the call-in requirements. (Knox Dep. p. 87). In addition, Plaintiff maintains that Whitley told him she would take care of informing his supervisors that he would be absent. (Id. at pp. 87-88). Whitley was the person who later made the decision to terminate Plaintiff based on his alleged violation of the policy. (King Dep. p. 61). Thus, if a jury believed Plaintiff's testimony, it would be entitled to find that Plaintiff was not terminated for violating a policy he was told he did not have to comply with. Based on this testimony, a jury could also infer that Defendant had knowledge that Plaintiff was going to be absent for the rest of the week and that Plaintiff did not then need to call-in his absences. Accordingly, a jury could reasonably conclude that Plaintiff was fired for taking FMLA leave and not for violating the "no call, no show" policy.

In addition, on Friday, September 16, Whitley, Milner, and Lake met to discuss the continuation of Plaintiff's employment. (Whitley Dep. pp. 100, 106; Lake Dep. pp. 37-39). During this meeting, the decision was made to terminate Plaintiff on Monday, September 19 if he did not return to work with his FMLA medical certification form. (Whitley Dep. p. 104). This indicates that Plaintiff was not fired for violating the "no call, no show" policy, but was instead fired for not returning his FMLA certification on Monday, September 19.[10] As of

_____

[10]It is undisputed that Plaintiff's doctor did provide medical certification for his serious health condition, but there is a factual dispute as to whether Plaintiff had his medical certification in his possession on Monday, September 19 when he returned to work and was subsequently terminated. (Knox Dep. p. 118; Parker Dep. p. 31; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. 3). This disputed fact is, however, irrelevant to the Court's consideration of Defendant's Motion for Summary Judgment because Defendant's request for medical certification was made on September 12, which means Plaintiff had until at least September 26 to return his FMLA medical

September 19, however, Plaintiff had only had seven calendar days to get his FMLA leave certified by a doctor because Defendant requested medical certification on September 12. FMLA's regulations clearly provide that employers must allow their employees at least fifteen (15) days to comply with a request for medical certification when the need for FMLA leave is unforeseeable. 29 C.F.R. § 825.305(b). Thus, there is evidence that would entitle a jury to conclude that Plaintiff was terminated for not returning his FMLA certification on Monday, September 19, which is a clear violation of FMLA.

Also, Lake told Whitley as early as Monday, September 12 that he wanted to terminate Plaintiff. (Whitley Dep. p. 115). Lake participated in the meeting with Milner and Whitley in which the decision was made to terminate Plaintiff, and he signed the termination notice. (Whitley Dep. p. 100; Lake Dep. pp. 37-38; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. 10). Because Lake wanted to terminate Plaintiff as early as September 12, before any alleged "no call, no show" violations, a jury could reasonably infer that the alleged "no call, no show" violations were not the real reason for Plaintiff's termination. As a result, there are genuine issues of material fact as to whether Plaintiff was terminated for reasons unrelated to his FMLA request, and therefore Defendant's Motion for Summary Judgment on Plaintiff's interference claim is denied.

### FMLA Retaliation Claim

In contrast to an interference claim, a plaintiff asserting a FMLA retaliation claim must

_____

certification.

prove that "his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." <u>Strickland</u>, 239 F.3d at 1207.  When there is no direct evidence to support a plaintiff's FMLA retaliation claim, the courts apply the same <u>McDonnell Douglas</u> burden-shifting analysis established by the Supreme Court for evaluating Title VII discrimination claims.  <u>Id.</u> (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)).  To establish a prima facie case of retaliation under FMLA, the plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action.  <u>Hulbert v. St. Mary's Health Care System, Inc.</u>, 439 F.3d 1286, 1297 (11th Cir. 2006).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason ("LNR") for the adverse employment action.[11]  <u>Id.</u>  Once the defendant articulates an LNR, the burden shifts back to the plaintiff to show that the defendant's proffered reason for the adverse action is pretextual.  <u>Id.</u>

In this case, the Plaintiff has established a prima facie case.[12]  The statutorily protected activity that Plaintiff engaged in was the taking of FMLA qualifying leave on the three days he

_____

[11]The defendant's burden at this stage is a burden of production.  <u>See</u> <u>Jackson v. State of Ala. State Tenure Comm'n</u>, 405 F.3d 1276, 1289 (11th cir. 2005).

[12]Defendant has "assumed arguendo" that Plaintiff can establish a prima facie case, and Defendant's Brief contains no argument that Plaintiff cannot establish a prima facie case.  Defendant's argument is that it had an LNR for terminating Plaintiff.  Thus, this Court will not engage in an exhaustive analysis of whether Plaintiff has adequately established a prima facie case.

was absent. The adverse employment action was the Plaintiff's termination. The causal connection is readily apparent from, among other things, the timing of the decision because Plaintiff was fired on the day that he returned from FMLA qualifying leave. See Brungart v. BellSouth Telecommns., Inc., 231 F.3d 791, 799 (11th Cir. 2000) ("The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.").

Upon this showing, the burden shifts to Defendant to articulate an LNR. The only LNR that Defendant has proffered is that Plaintiff was terminated for violating the "no call, no show" policy.[13] Because Defendant has articulated an LNR, the burden is on Plaintiff to demonstrate that Defendant's LNR is pretextual. Plaintiff can succeed in demonstrating that Defendant's proffered reason is pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jackson, 405 F.3d at 1289.

Because Plaintiff in this case has demonstrated that genuine issues of material fact as to whether Defendant's LNR is pretextual, this Court finds that Defendant is not entitled to summary judgment on Plaintiff's retaliation claim. As the Court noted in the discussion of the interference claim, there are genuine issues of material fact as to whether Plaintiff was terminated for violating the "no call, no show" policy. The same evidence that the Court cited

---

[13]As the Court established earlier in its Order, FMLA does not preclude Defendant from relying on its "no call, no show" policy as a basis for Plaintiff's termination.

in its discussion of Plaintiff's interference claim also creates genuine issues of material fact as to whether Defendant's LNR is pretextual. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim is denied.

## 2. Damages

The Defendant has also moved for summary judgment on the damages issues on the basis that Plaintiff's award of back pay and front pay should be limited to the date Plaintiff refused an unconditional offer of reinstatement. Defendant also argues that Plaintiff is not entitled to an award of liquidated damages as specified in 29 U.S.C.A. § 2617(a)(1)(A)(iii) because Defendant acted in good faith. In response, Plaintiff has filed a Notice of Objection to the exhibits that Defendant has attached to its Motion for Summary Judgment to support Defendant's argument on the damages issue. Because the Court cannot rule on the damages issue until it has addressed Plaintiff's argument that the Court cannot rely on Defendant's exhibits, the Court will first address Plaintiff's Notice of Objection.

## NOTICE OF OBJECTION

Defendant attached several exhibits to its Motion for Summary Judgment. (Def.'s Mot. Summ. J. Ex.'s 1-7). The exhibits are letters between Defendant's Assistant General Counsel, Matthew Flesher, and Plaintiff's Counsel, Carter Schondelmayer. The letters contain, among other things, an offer to reinstate Plaintiff to his previous position and specifically provide that the offer to reinstate Plaintiff is not conditioned on Plaintiff abandoning his claim for back pay damages. Plaintiff has objected to these exhibits on grounds that the letters contain inadmissible evidence of settlement discussions in violation of Federal Rule of Evidence 408,

and that the letters are improperly before the Court in violation of the Court's Local Rules for Standards of Conduct. Additionally, Plaintiff has asked this Court to find that Defendant has waived any claim of attorney-client privilege between Flesher and Cessna regarding Cessna's investigation into, and settlement responses to, Plaintiff's FMLA claims. For the following reasons, Plaintiff's objections are without merit.

Federal Rule of Evidence 408 ("Rule 408") bars (1) the admission of offers of settlement and (2) statements and conduct made "in the course of compromise negotiations." FED. R. EVID. 408. An unconditional offer of reinstatement is not an offer of settlement under Rule 408 because unconditional offers of reinstatement do not require that employees abandon or modify their suit. Lightfoot v. Union Carbide Corp., 110 F.3d 898, 909 (2d Cir. 1997) (holding that Rule 408 does not bar the admission of an unconditional offer of reinstatement because, by definition, an unconditional offer of reinstatement does not require that an employee settle or compromise his claim); Holmes v. Marriott Corp., 831 F. Supp. 691, 711 (S.D. Iowa 1993) ("It is precisely because an unconditional offer of reinstatement is not made 'in compromising or attempting to compromise a claim' that true unconditional offers of reinstatement clearly fall outside the coverage of Federal Rule of Evidence 408."). In this case, Defendant specifically offered to reinstate Plaintiff to his previous position without requiring that Plaintiff "release or waive any claims he may have against Cessna." (Def.'s Mot. Summ. J. Ex. 7). As a result, Defendant's unconditional offer of reinstatement is not an offer of settlement because Defendant's reinstatement offer was not made in an effort to settle or compromise Plaintiff's FMLA claim.

But the inquiry does not end there. Rule 408 bars all statements and conducts made in the course of compromise negotiations. See FED. R. EVID. 408; 2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 408.05[2], at 408-20 (2d ed. 2007) ("[Rule 408] extends its coverage to all conduct and statements during negotiation."). The test for whether a communication constitutes a compromise negotiation is whether the party intended that the communication be a part of the compromise negotiations. Blu-J, Inc. v. Kemper C.P.A. Group, 916 F.2d 637, 642 (11th Cir. 1990). Defendant's offer of reinstatement is included in three letters from Defendant to Plaintiff. (Def.'s Mot. Summ. J. Exs. 3, 5, & 7). Defendant first sent an offer of reinstatement to Plaintiff's counsel on October 18, 2005. (Def's Mot. Summ. J. Ex. 3). Defendant then sent other letters on October 20, 2005, and October 28, 2005, repeating the offer of reinstatement and emphasizing that Defendant's offer did not require that Plaintiff waive or release his FMLA claims. (Def's Mot. Summ. J. Exs. 5 & 7).

The October 18 letter can be construed as a compromise negotiation because Defendant intended that the October 18 letter be a part of the compromise negotiations. At the beginning of the letter Flesher wrote, "This letter is a communication made for the purposes of furthering discussions regarding settlements of disputed claims and issues and should be treated accordingly." (Def's Mot. Summ. J. Ex. 3). Because all of Flesher's statements in the October 18 letter were made in the course of a compromise negotiation, those statements, including the unconditional offer of reinstatement, fall within the scope of Rule 408. Thus, the October 18 letter is barred by Rule 408 unless it is being used for "purposes not prohibited" by Rule 408. See FED. R. EVID. 408(b).

The offer of reinstatement is being used to prove mitigation of damages, and there is currently a split of authority as to whether evidence used to prove mitigation of damages is a purpose not prohibited by Rule 408. Compare, e.g., Stockman v. Oakcrest Dental Center, P.C., 480 F.3d 791 (6th Cir. 2007) (holding that using settlement evidence to prove mitigation of damages is a purpose prohibited by Rule 408), with Bhandari v. First Nat'l Bank of Commerce, 808 F.2d 1082 (5th Cir. 1987) (holding that using settlement evidence to prove mitigation is a purpose not prohibited by Rule 408). Fortunately this Court does not need to resolve this conflict because the October 20 and October 28 letters can be used to establish that Plaintiff received an unconditional offer of reinstatement. Those letters cannot be construed as communications made in the course of compromise negotiations, and therefore, they fall outside the scope of Rule 408.

In contrast to the October 18 letter, the letters dated October 20 and 28 make no reference to being communications made for the purposes of settlement. The letters simply state that Defendant is offering to reinstate Plaintiff without any requirement that Plaintiff release or compromise his FMLA claims. (Def's Mot. Summ. J. Exs. 5 & 7). The offer itself is not an offer to compromise because unconditional offers of reinstatement are not offers of settlement. See Lightfoot, 110 F.3d at 909. Furthermore, there is nothing else in those letters indicating that they were intended as compromise negotiations; the letters simply communicate to Plaintiff that Defendant is offering to reinstate Plaintiff without any requirement that he waive his FMLA claims. As a result, Defendant's October 20 and October 28 letters are not

barred by Rule 408.[14]

Likewise, Plaintiff's argument that Defendant has waived attorney-client privilege by using the letters as evidence is without merit. In <u>Saladin v. Turner</u>, the district court held that the defendant did not waive attorney-client privilege by introducing letters between attorneys to establish that the plaintiff had received an unconditional offer of reinstatement. 936 F. Supp. 1571, 1582-83 (N.D. Okl. 1996). The court reasoned that because both parties were represented by counsel when defendant extended an unconditional offer of reinstatement to the plaintiff, it would have been improper for the defendant to have communicated that offer directly to the plaintiff. <u>Id.</u> at 1582. The defendant was available at trial for cross-examination on its intent and thought processes in formulating the offer. <u>Id.</u> The only restricted area of inquiry on cross-examination of the defendant was the communication that defendant had with its own counsel regarding the offer of reinstatement. <u>Id.</u> at 1582-83. As a result, the district court held that the letters between the attorneys communicating the offer of reinstatement was not within the attorney-client privilege. <u>Id.</u> at 1583.

Here, the letters do not disclose attorney-client communications. The letters between

---

[14]The Plaintiff has also argued that the letters are improperly before the Court pursuant to Standard of Conduct (B)(4)(d), which is a part of the Local Rules for the Middle District of Georgia. Standard of Conduct (B)(4)(d) provides that "letters between lawyers should not be sent to judges." This Standard does not apply to letters between attorneys that are attached as exhibits to a Motion for Summary Judgment as evidence that a Plaintiff received an unconditional offer of reinstatement. Furthermore, the Preamble to the Standards of Conduct specifically states that the Standards of Conduct "are not intended to generate disputes that may result in additional litigation, <u>and they should not be cited as legal authority in any disciplinary proceeding or in any civil or criminal action.</u>" Pmbl. to Middle District of Georgia, Local Rules for Standards of Conduct.

Flesher and Schondelmayer were letters between attorneys, not letters between an attorney and client. As in <u>Saladin</u>, Plaintiff was represented by counsel when Defendant offered to reinstate Plaintiff. It would have therefore been impermissible for Defendant to have communicated that offer directly to Plaintiff. Plaintiff has not provided any alternative manner by which Defendant could have communicated that offer to Plaintiff without corresponding directly with counsel. Defendant should not be faced with the prospect of forfeiting the protection of the attorney-client privilege simply because it communicated an offer of reinstatement to Plaintiff's attorney, especially when that was the only proper method of communicating the offer to Plaintiff. In addition, Defendant is not trying to use the attorney-client privilege as a "shield and sword." The letters are being used only to show that Plaintiff received an unconditional offer of reinstatement. Plaintiff has failed to demonstrate how he will be prejudiced if he is not allowed to take discovery of Flesher. As a result, Plaintiff's Notice of Objection to Defendant's exhibits is DENIED. The Court will now consider Defendant's argument that Plaintiff's damages should be limited because Plaintiff did not reasonably mitigate damages and because Defendant acted in good faith in terminating Plaintiff.

**MITIGATION OF DAMAGES**

In FMLA cases, as in other employment discrimination cases, a plaintiff has a duty to reasonably mitigate damages. <u>See</u> <u>Killian v. Yorozu Automotive Tennessee, Inc.</u>, 454 F.3d 549, 556-57 (6th Cir. 2006); <u>Viereck v. City of Gloucester City</u>, 961 F. Supp. 703, 709 (D.N.J. 1997). As part of the duty to reasonably mitigate damages, an employment discrimination plaintiff must use reasonable diligence in seeking comparable employment. <u>See</u> <u>Munoz v.</u>

Oceanside Resorts, Inc., 223 F.3d 1340, 1347 (11th Cir. 2000). Thus, a plaintiff's unreasonable rejection of a defendant's unconditional offer of reinstatement tolls the accrual of a defendant's liability for back pay and prevents the plaintiff from receiving front pay. Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 102 S. Ct. 3057, 73 L. Ed. 2d 721 (1982) (holding that an employer in a Title VII case can toll the accrual of back pay liability by unconditionally offering the claimant the job previously denied); Stanfield v. Answering Serv., Inc., 867 F.2d 1290, 1295 (11th Cir. 1989) (recognizing that employment discrimination plaintiff was not entitled to front pay because the plaintiff unreasonably rejected her employer's unconditional offer of reinstatement). Whether a plaintiff acted reasonably in rejecting an unconditional offer of reinstatement is generally a question of fact to be decided by the jury. O'Donnell v. Georgia Osteopathic Hosp., Inc., 748 F.2d 1543, 1551 (11th Cir. 1984), *overruled on other grounds by* Lindsey v. Am. Cast Iron Pipe Co., 810 F.2d 1094 (11th Cir. 1987); Fiedler v. Indianhead Truck Line, Inc., 670 F.2d 806, 808 (8th Cir. 1982). The defendant bears the burden of proving that the plaintiff unreasonably rejected the defendant's unconditional offer of reinstatement. Lathem v. Dep't of Children and Youth Servs., 172 F.3d 786, 794 (11th Cir. 1999). The reasonableness of a plaintiff's rejection is judged by looking at the terms of the offer and the circumstances surrounding it. Toledo v. Nobel-Sysco, Inc., 892 F.2d 1481, 1493 (10th Cir. 1989).

Here, Defendant offered to reinstate Plaintiff to his prior position without any condition or limitation requiring that Plaintiff waive his FMLA claim. (Def.'s Mot. Summ. J. Exs. 5 & 7). Plaintiff rejected the offer and now asserts two justifications for why his rejection was reasonable: (1) Plaintiff claims it would have been embarrassing for him to return to work at

Cessna, and he feared that Defendant would retaliate against him if he returned to work; and (2) Defendant would not guarantee that Plaintiff would be allowed to take a hunting trip in November that Plaintiff had already paid a substantial deposit for and had obtained special permission to take prior to his termination.

First, Plaintiff's argument that he reasonably rejected Defendant's offer because he feared retaliation and was too embarrassed to return to Cessna is without merit. Plaintiff has introduced no evidence to justify his alleged belief that Defendant would retaliate against him. In fact, the October 28 letter sent from Flesher to Schondelmayer specifically said that "Cessna understands the applicable anti-retaliation law and has no intention of taking any steps contrary to those laws." (Def.'s Mot. Summ. J. Ex. 7). On similar facts, the district court in Saladin held that the plaintiff's fear of retaliation was not a reasonable basis for refusing the defendant's unconditional offer of reinstatement because the defendant promised not to retaliate against the plaintiff. 936 F. Supp. at 1582. Defendant in this case explicitly told Plaintiff that it would not retaliate against him, and Plaintiff has not pointed to any evidence to substantiate his alleged fear of retaliation. As a result, Plaintiff's alleged fear of retaliation cannot serve as a reasonable basis for Plaintiff's refusal of Defendant's offer of reinstatement.

Also, Plaintiff's mere "embarrassment" is not a reasonable basis for rejecting Defendant's offer. Employees are arguably always embarrassed when they are terminated. To allow an employee's embarrassment to serve as a reasonable basis for rejecting an unconditional offer of reinstatement would allow employment discrimination plaintiffs to circumvent the Supreme Court's holding in Ford that employers can toll the accrual of back pay

liability by unconditionally offering to reinstate the plaintiff. See Ford, 458 U.S. at 234; Cowen v. Standard Brands, Inc., 572 F. Supp. 1576, 1581 (N.D. Ala. 1983) (holding that an employee unreasonably rejected an employer's reinstatement offer because the employee's proffered reason for rejecting the offer was that his feelings were hurt). As a result, Plaintiff's embarrassment cannot serve as a reasonable basis for his refusal of Defendant's reinstatement offer.

As to Plaintiff's second contention, Plaintiff contends that in January 2005, prior to his termination, he obtained approval to take a hunting trip in November 2005, for which he paid an $800 deposit. (Knox Cont. Dep. pp. 91, 106-07; Lake Dep. pp. 49-50). Defendant contends that Plaintiff never received permission to take the hunting trip. At summary judgment, however, the Court must view the facts in the light most favorable to the Plaintiff. Defendant's contention that Plaintiff never received permission to take the hunting trip is an issue of fact that should be resolved by the jury. If a jury found that Plaintiff had received special permission to take the hunting trip prior to his termination and paid a substantial deposit to take the trip, then a jury could also find that Defendant's failure to guarantee that Plaintiff would be allowed to take the pre-approved hunting trip was a reasonable basis for rejecting Defendant's offer. Looking at the terms of the offer and the surrounding circumstances, Plaintiff believed he had been wrongfully terminated in violation of FMLA and his employer was offering him his job back without the right to take the vacation for which he had already been authorized to take prior to his wrongful termination. If Plaintiff had accepted Defendant's offer of reinstatement, Plaintiff would have lost the vacation benefit and the $800 he paid as a deposit. Whether a

plaintiff acted reasonably to mitigate his damages is typically a question of fact for the jury, and this Court cannot say that Plaintiff acted unreasonably as a matter of law. Accordingly, Defendant's Motion for Summary Judgment on the issue of Plaintiff's failure to reasonably mitigate damages is DENIED.

**LIQUIDATED DAMAGES**

An employee whose FMLA rights have been violated is presumptively entitled to receive liquidated damages, but the Court has discretion to deny a liquidated damages award if the employer proves that its violation was in good faith and that it had a reasonable basis for believing that its conduct did not violate FMLA. 29 U.S.C.A. § 2617; Cooper, 458 F.3d at 1287. As previously stated, there are genuine issues of material fact as to whether Defendant's termination of Plaintiff violated FMLA. Those same issues of fact make it inappropriate for the Court to conclude at this stage that Defendant acted in good faith and had a reasonable basis for believing that its conduct did not violate FMLA. Defendant's Motion for Summary Judgment on the liquidated damages issue is therefore DENIED.

**III.    CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED. In addition, Plaintiff's Notice of Objection to Defendant's Exhibits Supporting Defendant's Motion for Summary Judgment and Request for Additional Discovery is DENIED.

**SO ORDERED**, this the 26th day of September, 2007.


/s/ Hugh Lawson

**HUGH LAWSON, Judge**

dhc